*Formatted for Electronic Distribution* *For Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| **In re:** |  | Filed & Entered |
| John L. Densmore, | Chapter 13 Case | On Docket |
| Debtor. | # 08-10639 | March 21, 2011 |
| **John L. Densmore,** |  |  |
| Plaintiff, |  |  |
| v. | Adversary Proceeding |  |
| **Litton Loan Servicing, L.P.,** | # 09-1032 |  |
| Defendant. |  |  |

Appearances:   Rebecca A. Rice, Esq.        Douglas J. Wolinsky, Esq.
               Cohen & Rice                 Kevin Michael Henry, Esq.
               Rutland, VT                  Shireen T. Hart, Esq.
               For John L. Densmore         Primmer Piper Eggleston & Cramer PC
                                            Burlington, VT

                                            Grant C. Rees, Esq.
                                            Milton, VT
                                            For Litton Loan Servicing, L.P.

## MEMORANDUM OF DECISION
### DENYING SUMMARY JUDGMENT MOTION OF LITTON LOAN SERVICING, L.P.

John L. Densmore (the "Debtor") filed a complaint (doc. # 1)[1] to initiate this adversary proceeding on August 10, 2009. On September 9, 2009, Litton Loan Servicing, L.P. ("Litton") filed its answer (doc. # 4). Litton filed the instant motion for summary judgment on November 30, 2010 (doc. ## 25, 26), seeking dismissal of the Debtor's claim that Litton lacks standing to enforce the mortgage note against the Debtor. For the reasons set forth below, and due to the lack of an essential material fact in the record, the Court denies Litton's motion for summary judgment.

### JURISDICTION

This Court has jurisdiction over this adversary proceeding and the Bank's motion for summary judgment under 28 U.S.C. §§ 1334 and 157(b)(2)(B).

### UNDISPUTED MATERIAL FACTS

Based upon the record in this case and adversary proceeding, and pursuant to Vt. LBR 7056-(a)(3), the Court finds the following facts to be material and undisputed:

---

[1] All citations marked "(doc. # ___)" refer to docket entries in AP # 09-1032 unless otherwise indicated.

1

1. On August 28, 2001, the Debtor executed and delivered a promissory note (the "Note") in the amount of $172,000 to Washington Mutual Bank, F.A. ("Washington Mutual") (doc. # 26, ¶ 1; doc. # 31).

2. The proceeds of this loan were used to finance the purchase of real property located at 410 Colefax Road, Cambridge, New York (the "Property") (doc. # 26, ¶ 2; doc. # 31).

3. Also on August 28, 2001, the Debtor executed and delivered to Washington Mutual a mortgage deed to the Property to secure the loan (the "Mortgage") (doc. # 26, ¶ 3; doc. # 31).

4. The original Note is in the possession of Litton, as an agent of Wells Fargo Bank, N.A. ("Wells Fargo"), and is endorsed in blank by Thomas K. Mitchell, Vice President, Washington Mutual (doc. # 26, ¶ 4; doc. # 31).

5. Wells Fargo is the trustee of the Asset-Backed Pass-through Certificates Series 2006-SHL1 trust (the "Trust"), which is governed by a Pooling and Servicing Agreement dated as of October 1, 2006 (the "PSA") (doc. # 26, ¶ 5; doc. # 31).

6. Washington Mutual assigned the Mortgage to Wells Fargo as trustee of the Trust on May 21, 2008 (doc. # 26, ¶¶ 6–7; doc. # 31).

7. The Debtor filed a voluntary chapter 13 petition on July 11, 2008 (# 08-10639, doc. # 1).

8. Pursuant to the PSA, Litton was appointed to act as the servicer on behalf of the Trust and Wells Fargo as trustee (doc. # 26, ¶ 8; doc. # 31).

9. The relevant provision of the PSA provides that "the Servicer shall have full power and authority . . . to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable" (doc. # 26, ¶ 9; doc. # 31).

10. In connection with the PSA, Wells Fargo appointed Litton as its attorney-in-fact through a Limited Power of Attorney ("LPA") executed on April 21, 2009 (doc. # 26, ¶ 10; doc. # 31).

11. On September 4, 2009, Litton, on behalf of Wells Fargo as trustee, filed an amended proof of claim in connection with the Note and Mortgage (doc. # 26, ¶ 11; doc. # 31).

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that no genuine issue of material fact exists. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies those facts that are material; only disputes

2

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary are not material. Id. In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. Id. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir 2006). If the nonmoving party does not come forward with specific facts to establish an essential element of that party's claim on which it has the burden of proof at trial, the moving party is entitled to summary judgment. See Celotex Corp., 477 U.S. at 323–25 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case"); see also Tufariello v. Long Island R. Co., 458 F.3d 80, 85 (2d Cir. 2006).

## DISCUSSION

In his complaint, the Debtor objects to Litton's proof of claim, inter alia, on the basis that "[t]here is no connection between the Proof of Claim and the Trust, nor is there any evidence as to who the owner of the promissory note is or . . . what authority Litton has to file the proof of claim" (doc. # 1, ¶ 15). Litton's position is that this argument fails as a matter of law because Litton has standing and authority as servicing agent to file a proof of claim on behalf of Wells Fargo, the trustee of the Trust, because Litton is in possession of the original Note endorsed in blank by the original lender and the Mortgage was assigned to Wells Fargo as trustee of the Trust (doc. # 25, pp. 1–2).

Bankruptcy law does not specify the requirements for the enforcement of promissory notes. As a result, the legal obligations of parties disputing the validity of a promissory note are determined by applicable non-bankruptcy law, which is usually state law. See Butner v. United States, 440 U.S. 48, 54–55 (1979).

Vermont has adopted a version of the Uniform Commercial Code ("UCC") concerning negotiable instruments, which applies to promissory notes. The relevant provision of Article 3, 9A V.S.A. § 3-101 et seq., describes a "[p]erson entitled to enforce" an instrument, in relevant part, as "(i) the holder of the instrument." 9A V.S.A. § 3-301. The general definitions section of Vermont's UCC defines a "holder," in relevant part, as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." 9A V.S.A. § 1-201(21)(A).

It is undisputed that Litton is in possession of the original Note, and that the Note is endorsed in blank by the vice president of Washington Mutual, the original lender (see Undisputed Material Facts ¶¶

3

1, 4, supra). It is also undisputed that Washington Mutual assigned the Mortgage securing the loan to Wells Fargo as trustee of the Trust on May 21, 2008, and that the Debtor did not file his bankruptcy petition until after the assignment (see Undisputed Material Facts, ¶¶ 3, 6–7, supra).

The Debtor argues that there is a genuine issue of material fact as to whether the Note was ever transferred into the Trust (doc. # 30, pp. 4–5), and thus whether Litton, as servicer to Wells Fargo as trustee of the Trust, is entitled to enforce the Note. The Debtor cites In re Samuels, 415 B.R. 8 (Bankr. D. Mass 2009), in support of his argument. However, this reliance is misplaced because, with respect to the note, the court in Samuels held that "[b]y virtue of its possession of a note indorsed in blank, [the bank was] the holder of the note and as such ha[d] standing in this case to seek payment thereof." Id. at 20. The court in Samuels did observe that the loan (or whatever interest the transferees had in the loan) was transferred several times, that it ultimately went into a pool trust by transfer to the bank as trustee, and that the loan number was listed on the mortgage loan schedule for the pooling and servicing agreement. Id. at 18. However, the court made these observations as part of the factual record, and they did not pertain to the court's analysis of whether the bank was the holder of the note. See id. at 18, 20. Rather, the observations pertained to the court's analysis of whether the bank had established the chain of title as to the assignments of the mortgage. See id. at 20–21. Here, there is no dispute that the original lender assigned the Mortgage to Wells Fargo as trustee of the Trust (see Undisputed Material Facts, ¶ 6, supra), and thus no dispute that Wells Fargo, and Litton as its servicing agent, has established chain of title with respect to the Mortgage. Therefore, the question of whether the loan in this case is listed in the PSA is immaterial to the question of whether Litton may enforce the Note. See Samuels, 415 B.R. at 20.[2]

The Debtor also raises a question as to whether the PSA and LPA authorize Litton to file a proof of claim on behalf of Wells Fargo, as its servicing agent (doc. # 30, p. 5). It is undisputed that Litton was appointed to act as the servicer pursuant to the October 1, 2006 PSA, which provides that "the Servicer shall have full power and authority . . . to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable" (see Undisputed Material Facts, ¶¶ 5, 8–9, supra). It is also undisputed that, in connection with the PSA, Wells Fargo appointed Litton as its attorney-in-fact through the LPA (see Undisputed Material Facts, ¶ 10, supra). The April 21, 2009 LPA grants Litton "full authority and power to execute and deliver on behalf of [Wells Fargo]" a

---

[2] The Debtor's reliance upon Samuels for his argument that there is a genuine issue of material fact as to whether any transfer of the Note into the Trust was performed in compliance with the PSA (see doc. # 30, pp. 4–5) is similarly misplaced. The court in Samuels held that "[e]ven if this direct assignment were somehow violative of the PSA, giving rise to unfavorable tax, regulatory, contractual, and tort consequences, neither the PSA nor those consequences would render the assignment itself invalid." Samuels, 415 B.R. at 22. Further, compliance with the PSA had no bearing on the court's analysis of whether the bank was the holder of the note. See id. at 20. Accordingly, whether the Note was transferred into the Trust in compliance with the PSA is immaterial to the question of whether Litton has standing and authority as servicing agent to file a proof of claim on behalf of Wells Fargo.

4

number of instruments in connection with the PSA, including "[a]ll documents with respect to residential mortgage loans serviced for [Wells Fargo] by said attorney-in-fact which are customarily and reasonably necessary and appropriate to the satisfaction, cancellation, or partial or full release of mortgages, deeds of trust or deeds to secure debt upon payment and discharge of all sums secured thereby" (doc. # 26-5, p. 1). Litton filed the amended proof of claim in connection with the Note and Mortgage on behalf of Wells Fargo as trustee, post-LPA, on September 4, 2009 (see Undisputed Material Facts, ¶¶ 10–11, supra).

A claimant generally must be a "creditor or the creditor's authorized agent" in order to file a proof of claim. Fed. R. Bankr. P. 3001(b). "A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer." In re Minbatiwalla, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010) (quoting In re Conde-Dedonato, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008)). Here, there is no dispute that Litton is the servicer on behalf of the Trust, pursuant to the PSA (see Undisputed Material Facts, ¶ 8, supra). Thus, Litton was authorized under the PSA to file a proof of claim against the Debtor on September 4, 2009, pursuant to its duties as servicer for Wells Fargo. See In re Minbatiwalla, 424 B.R. at 109; see also In re Conde-Dedonato, 391 B.R. at 250 (finding that where "[t]he Debtor d[id] not dispute that [the servicer was] the servicer . . . it [was] clear that [the servicer was] the servicer of the note and mortgage and it ha[d] standing to file a proof of claim against the Debtor").[3]

Nonetheless, the Court notes that there is an outstanding question of material fact in this case as to when the Note was endorsed, which is determinative of Litton's standing to enforce the Note. The Court is obligated to raise an issue implicating standing sua sponte, even if the parties fail to raise it, because it implicates the Court's subject matter jurisdiction. See Thompson v. Cnty. of Franklin, 15 F.3d 245, 248 (2d Cir. 1994) (citation omitted). Under relevant Vermont jurisprudence pertaining to foreclosure actions, "[i]n order to enforce a mortgage note, a plaintiff must show that it was the holder of the note at the time the Complaint was filed." Parker v. U.S. Bank Nat'l Assoc. as Trustee ex rel. the Holder of the

---

[3] The Debtor makes two additional arguments in opposition to summary judgment. First, the Debtor argues that summary judgment should be denied because Litton failed to attach a note with any endorsement to its proof of claim and has thus lost the presumption of prima facie validity (doc. # 30, pp. 5–6). However, loss of the presumption of prima facie validity merely shifts "the burden of proving the existence and amount of the claim" to the claimant. In re Parrish, 326 B.R. 708, 719 (Bankr. N.D. Ohio 2005) (citation omitted). Here, it is undisputed that Litton possesses the original Note, which is endorsed in blank by the vice president of the original lender (see Undisputed Material Facts, ¶ 4, supra), and Litton filed a copy of the endorsed Note as an attachment to its statement of undisputed material facts (see doc. # 26-2). Although there is a genuine issue of material fact as to the timing of the endorsement (see infra), the amended its proof of claim was sufficient to create a presumption of prima facie validity. Second, the Debtor argues that summary judgment should be denied because there is a dispute as to the amount of Litton's claim (doc. # 30, pp. 6–7). However, Litton correctly points out that Litton seeks summary judgment only on the issue of standing, and has not requested that the Court enter judgment fixing the amount allowed by this proof of claim. Accordingly, any dispute as to the amount of Litton's claim is outside the scope of the instant motion.

5

Adjustable Rate Mortg. Trust 2007-1 (In re Parker), AP No. 09-1022 (Bankr. D. Vt. March 18, 2011) (citation omitted).[4]

Here, the document Litton has filed to enforce its rights under the Note and Mortgage is a proof of claim, rather than a complaint or motion, and the seminal date for analysis and allowance of a proof of claim, including the question of standing, is the date the bankruptcy case was commenced.  See Official Form 10.  Therefore the critical inquiry is whether Litton was the holder of the Note as of the date of the Debtor's bankruptcy filing.  Since the date the Note was endorsed is a material fact essential to the determination of whether Litton is entitled to judgment as a matter of law, and since the record of undisputed material facts does not include any information about the date of the endorsement, summary judgment is not proper.

## CONCLUSION

For the reasons set forth above, Litton's motion for summary judgment is denied.  Unless the parties present undisputed evidence showing the date the endorsement was executed, the Court will set a trial date to determine whether Litton had standing to file the proof of claim.

This memorandum of decision constitutes the Court's findings of facts and conclusions of law.

_____

March 21, 2011                                                              Colleen A. Brown
Burlington, Vermont                                                   United States Bankruptcy Judge

---

[4] See also Vt. R. Civ. P. 80.1(b)(1) (requiring a plaintiff to attach to a complaint "copies of the original note and mortgage deed and proof of ownership thereof, including copies of all original endorsements and assignments of the note and mortgage deed" in order to file a valid and sufficient foreclosure complaint).